IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WEST CORPORATION, A Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) | 8:05CV88 |
| vs. | ) ) | ORDER |
| AMERICAN TELEPHONE AND TELEGRAPH COMPANY, A New York Corporation, | ) ) ) ) ) | |
| Defendant. | ) | |

This matter is before the magistrate judge pursuant to 28 U.S.C. § 636 and the general order of referral on plaintiff's Motion to Compel Discovery Responses (#24). The parties have complied with NECivR 7.1(i).

Having considered the defendant's response in opposition (#29 & #30), and plaintiff's reply brief (#31), I find that the Motion to Compel should be granted in its entirety.

### BACKGROUND

*1. Pleadings*

The complaint alleges that on October 6, 2000 plaintiff ("West") and defendant ("AT&T") entered into a Master Agreement (the "Master Agreement") whereby AT&T agreed to provide West voice and data services at a set rate. AT&T is regulated by the Federal Communications Commission ("FCC"). The FCC regulates and controls a Universal Service Fund ("USF") which is a program designed to provide support to rural areas, low income consumers, schools, and libraries for telecommunications and connection to the internet. AT&T is required by the FCC to contribute to the USF program on a percentage basis.

In a decision dated December 13, 2002, effective April 1, 2003, the FCC approved a Universal Connectivity Charge ("UCC"), allowing carriers such as AT&T to recover their USF contributions directly from their customers as a separate line item charge on the customer's bill. West contends that, in that same decision, the FCC determined that there was no regulatory prohibition against carriers adding a surcharge to recover their internal administrative costs for calculating, collecting and remitting the USF contributions; however, the decision stated that if a carrier desired to collect its internal administrative costs, the surcharge had to be a line item separate from the UCC line item. According to West, the FCC also determined that the UCC and the administrative charges could only be collective prospectively from April 1, 2003; for those customers that had service agreements pre-dating the December 13, 2002, decision, the administrative charges could only be collected in accordance with the terms of pre-existing service agreements.

On March 27, 2003, AT&T advised West that effective April 1, 2003 it would begin assessing West an "Administrative Expense Fee" ("AEF") for its costs in complying with USF funding requirements. It is West's position that the Master Agreement between West and AT&T, which predates the December 12, 2002 FCC decision, does not permit or authorize AT&T to charge West the AEF. For that reason, West has withheld in excess of $75,000 in AEF charges claimed by AT&T.

West filed this action on February 24, 2005, seeking a declaratory judgment that AT&T is not authorized under the terms of the Master Agreement to collect an AEF charge from West, and that West is not required to pay AEF charges to AT&T.[1] West also seeks reimbursement for an amount in excess of $20,000 it paid to AT&T for AEF charges on the first invoice it received from AT&T that included AEF charges.

In its answer, AT&T alleges that the Master Agreement and the December 13, 2002 FCC decision speak for themselves. It disagrees with West's interpretation of the FCC

---

[1]West contends that, pursuant to the Master Agreement–Service Order for Voice/Data Services, even if AT&T does have the right to assess the AEF, its assessed charges do not reflect the actual expenses it incurs. Under the contract, AT&T may only assess charges for actual expenses incurred. Instead, the AEF charged by AT&T constitutes a new rate element from which AT&T realizes a profit.

decision and affirmatively alleges that the complaint fails to state a claim upon which relief can be granted; that West's claims are barred by the doctrines of estoppel and/or waiver, and that West's claims should be barred by the doctrine of implied consent.

AT&T also asserted a counterclaim for breach of contract, alleging that the Master Agreement and all attachments thereto executed by West since October 6, 2000 through the present allow for AT&T to charge and collect from its customers its administrative expenses related to the USF assessments. Prior to April 2003, West paid both the USF assessment plus AT&T's related administrative expenses. Since April 2003, West has intentionally withheld payment of the AEF charges. The total amount of AEF charges West owes AT&T exceeds $400,000.

In its reply to AT&T's counterclaim, West denies that AT&T's interpretation of the FCC's December 13, 2002 decision is correct, admits it has withheld more than $400,000 in AEF charges, and affirmatively alleges the counterclaim fails to state a claim upon which relief can be granted, that the counterclaim is barred by estoppel and/or waiver, and that the counterclaim should be barred by the doctrine of "applied consent."

### 2. *Other Facts Applicable to Discovery Dispute*

West receives hundreds of bills for telecommunication services from AT&T each month. Each bill contains an amount for AEF, which West disputes. Because of the number of bills involved, AT&T was having difficulty tracking and reconciling the disputed AEF charges and disputed late fees associated with the various accounts. To rectify this problem, representatives of West and AT&T agreed to track the disputed charges on five global accounts. In doing so, West in no way agreed that the AEF charges were undisputed or that the AEF charges were accurate, fair or reasonable. The representatives of West and AT&T agreed that the AEF charges would remain fully disputed.

AT&T does not have different classifications of customers for purposes of assessing AEF charges, and all nonexempt customers are charged the same AEF rate. (Exempt customers are those who remit their USF contributions directly to the Universal Service Administration Company.)

## LEGAL ANALYSIS

The scope of discovery in federal civil actions is set out in Rule 26(b)(1) of the Federal Rules of Civil Procedure. Under Rule 26(b)(1), the parties to a lawsuit obtain "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."

This discovery dispute pertains to plaintiff's Interrogatories Nos. 6, 7, 8, 9, 13, 14 and 15, and Document Requests Nos. 1, 2, 4, 5, 6 and 7. In summary, plaintiff's requests cover the time period from 2000 through the present time and seek information about the gross dollar amount of administrative expenses AT&T incurred in assessing, calculating, collecting and remitting USF charges from West and from all of AT&T's customers, the total amount of AEF charges it collected from West and from its other customers, and how these charges were calculated and rates were determined. Plaintiff also requested documents regarding specific Service Order Attachments to its Master Agreement with AT&T.

AT&T objected to the Interrogatories on grounds of relevance to the extent they sought information for billing periods prior to April 1, 2003 and on the ground that the information was irrelevant to plaintiff's request for declaratory judgment. As for the requests for production of documents, AT&T objected on grounds of overbreadth and relevance as to any AEF fees charged for billing periods prior to March 2003. Its objections based on undue burden appear to be based on AT&T's fear that it may not be able to locate the requested documents. Finally, AT&T objects to the production of any proprietary or confidential information, trade secrets, privileged information, or materials constituting attorney work-product.

This is essentially a case about the contractual relationship between West and AT&T. Having carefully reviewed the pleadings, the parties' briefs, and the plaintiff's discovery requests, I conclude that the information sought is relevant to the claims and defenses asserted by the parties and that AT&T's objections based on relevance are without merit. To the extent any of this information constitutes proprietary or confidential information, or trade secrets, it shall be produced subject to a protective order. If the parties are unable to reach an agreement about the terms of a protective order, the court will enter one on their behalf.

To the extent that any responsive materials constitute privileged information or materials attorney work-product, AT&T must identify the items in a privilege log in compliance with paragraph 3 of the initial case progression order (#10) filed May 17, 2005.

## ORDER

**IT IS ORDERED** that plaintiff's Motion to Compel Discovery Responses (#24) is granted, as follows:

1. Defendant shall respond to the disputed Interrogatories and Requests for Production on or before January 17, 2006.

2. Counsel for the parties shall file a stipulated motion for protective order on or before December 30, 2005. If they fail to do so, the court will enter a protective order on its own motion.

3. The circumstances of this dispute would make an award of expenses unjust and the court declines to award costs or fees to either party. *See* Fed. R. Civ. P. 37(a)(4)(B).

**DATED December 16, 2005.**

                        **BY THE COURT:**

                        **s/ F.A. Gossett**
                        **United States Magistrate Judge**