# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **WEST CORPORATION, a Delaware corporation,** | **CASE NO. 8:05CV88** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| **AMERICAN TELEPHONE AND TELEGRAPH COMPANY, a New York corporation,** | |
| Defendant. | |

This matter is before the Court on Defendant AT&T Corp.'s Statement of Appeal of Magistrate's Order (Filing No. 48); Defendant AT&T Corp.'s Motion for Summary Judgment (Filing No. 34); and Plaintiff West Corporation's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment (Filing No. 36). The matters have been fully briefed, and the Court has considered the evidence submitted.

This case is before the Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff West Corporation is a Delaware corporation with its principal place of business in Nebraska, and Defendant AT&T Corp.[1] is a New York corporation with its principal place of business in New Jersey. (Filing No. 1 at ¶¶ 1,2). The amount in controversy exceeds $75,000. (*Id.* at ¶ 6). *See James Neff Kramper Family Farm Partnership v. IBP, Inc.*, 393 F.3d 828, 833 (8th Cir. 2005) (stating "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.").

---

[1] Defendant AT&T Corp. claims it was erroneously named as American Telephone and Telegraph Company in the pleadings. (Filing No. 35 at 1).

## FACTS

The following facts are undisputed.[2]  Plaintiff West Corporation ("West") is a Delaware corporation with its principal place of business in Douglas County, Nebraska. (Filing No. 1 ("Complaint") ¶1, Filing No. 8 ("Counterclaim") ¶2).  AT&T Corp. ("AT&T") is a New York telecommunications company with its principal place of business in New Jersey.  (Complaint ¶2; Counterclaim ¶1).  AT&T conducts business in Nebraska.  (*Id.*). AT&T is regulated by the Federal Communications Commission ("FCC").  (Complaint ¶4; Counterclaim ¶1).

On October 6, 2000, AT&T and West entered into a Master Agreement, whereby AT&T agreed to provide, and West agreed to pay for, voice and data services.  (Filing No. 39, Ex. 1 ("Master Agreement")).  The Master Agreement contained both "General Terms and Conditions" as well as specific terms and conditions set forth in "service attachments" ("Attachments") to the Master Agreement.  (*Id.*).  The Master Agreement states that the substantive laws of New York apply "to any state law issues concerning construction, interpretation and performance."  (*Id.* ¶12.6).  Since October 6, 2000, AT&T and West have executed several new Attachments to the Master Agreement.  (Filing Nos. 39, Exs. 2-8).

---

[2]Neither West's nor AT&T's responsive briefs comply fully with NECivR 56.1(b)(1).  Rule 56.1(b)(1) states in part:

> The response *shall address each numbered paragraph in the movant's statement* and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response. (emphasis added)

Regardless, the Court has considered the statement of facts in West's and AT&T's briefs.

Prior to April 1, 2003, AT&T assessed a Universal Connectivity Charge which was comprised of Universal Service Fund ("USF") contributions that AT&T was required to make, plus a "mark-up" for other costs. (Filing No. 39, Ex. 9; Filing No. 39, Ex. 12 ("FCC Order") at 19 ¶31). In December 2002, the FCC issued a Report and Order in the case of *In re Federal-State Joint Board on Universal Service*, FCC 02-329, 17 F.C.C.R 24952 (Dec. 13, 2002) ("FCC Order"), wherein the FCC concluded that "telecommunications carriers may not recover their federal universal service contribution costs through a separate line item that includes a mark-up above the relevant contribution factor beginning April 1, 2003." (FCC Order at 3 ¶2). The FCC noted that carriers could "recover any administrative or other costs they currently recover in a universal service line-item through their customer rates or through another line item." (*Id.* at 23 ¶40).

On March 4, 2003, AT&T sent a letter to West, notifying West that AT&T would change its billing practice effective April 1, 2003. (Filing No. 39, Ex. 9). The letter informed West that "AT&T's administrative expenses that were previously included as part of the [Universal Connectivity Charge], [would] now be shown as a separate line item - the Administrative Expense Fee." (*Id.*). AT&T sent another letter to West on March 27, 2003, informing West that the Administrative Expense Fee ("AEF") would be "0.74% of the Customer's total net interstate and international charges, after application of all applicable discounts and credits with respect to charges billed on or after April 1, 2003." (Filing No. 39, Ex. 10). The letter informed West that the AEF allowed AT&T "to recover its internal costs associated with the federal USF program." (*Id.*).

3

West paid AT&T's AEF charges in April 2003. (Filing No. 35 at 5 ¶15; Filing No. 42 at 6 ¶10).[3]  On May 5, 2003, West sent a letter to AT&T, disputing AT&T's right to charge an AEF fee under the Master Agreement. (Filing No. 39, Ex. 11). West has withheld payment of AT&T's AEF charges since May 2003. (Filing No. 35 at 5 ¶16; Filing No. 42 at 6-7 ¶12).  AT&T has assessed $753,763.44 in AEF as of November 1, 2005. (Filing No. 38, Ex. 14).

## STANDARDS OF REVIEW

### *Appeal from Magistrate's Order*

In an appeal from a magistrate judge's order on a pretrial matter within 28 U.S.C. § 636(b)(1)(A), a district court may set aside any part of the magistrate judge's order shown to be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); NELR 72.3(d); *United States v. Apker,* 139 F.R.D. 129, 131 (D. Neb. 1991). "'Clearly erroneous' is a high standard to meet; the challenger must convince the reviewing court that a mistake has been made." *Smith v. BMI, Inc.,* 957 F.2d 462, 463 (7th Cir. 1992).

### *Summary Judgment*

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

---

[3]West claims it erroneously paid the April 2003 AEF charges. (Complaint ¶7).

4

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56 (c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

Because this matter is before the Court on diversity jurisdiction, the Court will apply the substantive law of the forum. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Nebraska follows the Restatement (Second) of Conflicts § 188. *Johnson v. U.S.*

*Fid. and Guar. Co.*, 696 N.W.2d 431 (Neb. 2005).  When a contract contains a choice of law provision, § 188 directs the Court to follow § 187.[4]  The Master Agreement between AT&T and West states that the substantive laws of New York apply "to any state law issues concerning construction, interpretation and performance."  (Filing No. 39, Ex. 1 ("Master Agreement") ¶12.6).  Both West and AT&T agree that the Master Agreement should be construed under the laws of New York, and AT&T is a New York corporation. (Filing No. 42 at 8; Filing No. 35 at 8).  In the absence of a violation of a fundamental state policy, Nebraska courts generally defer to the parties' choice of law provision.  *Vanice v. Oehm*, 526 N.W.2d 648, 651 (Neb. 1995).  Therefore, because no violation of a fundamental Nebraska state policy is alleged, the Court will apply New York law to substantive matters.

### *Appeal from Magistrate's Order*

AT&T filed a Statement of Appeal of Magistrate's Order (Filing No. 48), appealing Magistrate Judge Gossett's December 16, 2005, Order ("Magistrate's Order") (Filing No. 33). In the Magistrate's Order, Magistrate Judge Gossett granted West's Motion to Compel Discovery Responses (Filing No. 24) in its entirety. (Magistrate's Order at 1).  West argued

---

[4]Restatement (Second) of Conflicts § 187 states in pertinent part:

(2)   The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

   (a)    the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

   (b)   application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

that AT&T improperly objected to and failed to fully respond to Interrogatories 6-9 and 14-15 and Requests 1,2, and 4-7. (Filing No. 24). Magistrate Judge Gossett determined that information sought by West was relevant to the claims and defenses asserted by the parties and ordered AT&T to respond to the disputed Interrogatories and Requests. (Magistrate's Order at 4, 5).

AT&T appeals the Magistrate's Order, arguing that it ignores the fact that:

(1) West is only seeking a declaratory judgment in this matter based on the terms and conditions of its agreement with AT&T, (2) the only legal issues relevant to this case are whether the contracts between West and AT&T require West to pay AT&T's AEF cost recovery charges since April 2003, and the total amount West has withheld from payment beginning in May 2003 (West paid AEF assessments in April 2003), (3) West has sought accounting and financial information over an extensive period of time pre-dating the beginning of AT&T's assessment of AEF charges in April 2003, and (4) any challenges to the propriety of AT&T's AEF cost recovery program and the uniform cost recovery rates charged to AT&T's non-exempt customers should be deferred to the FCC under the doctrine of primary jurisdiction. (Filing No. 47 at 2).

AT&T further argues that the Magistrate's Order is contrary to law because it imposes "an unduly and overbroad discovery burden" on AT&T and that the accounting and financial information sought by West is not "reasonably calculated to lead to the discovery of admissible evidence." (*Id.* at 9). For these reasons, AT&T requests the Court to modify the Magistrate's Order "by eliminating the requirement that AT&T provide accounting and financial information in response to Plaintiff's Interrogatory Requests Nos. 6, 7, 8, 9, 13, 14 and 15, and Request for Production Nos. 1 and 2." (*Id.*).

On the other hand, West argues that "[i]f AT&T is authorized to assess AEF under the operative language . . . AT&T only has the right to assess expenses that are the 'result of expenses incurred by AT&T relating to regulatory assessments.'" (Filing No. 59 at 4).

7

West further argues that "to the extent AT&T is assessing fees that are not related to the collection of USF contributions and in violation of FCC regulations, West has the right to challenge those amounts and its discovery seeking information on actual expenses AT&T incurs in collecting USF from West versus the amounts AT&T is attempting to collect from West are relevant." (*Id.* at 5). West contends that AT&T placed the issue of the fairness and reasonableness of AT&T's AEF charges at issue in its Counterclaim when it claimed that West breached its contract with AT&T and when West made a general denial of AT&T's allegations. (*Id.* at 5).

> The Federal Rules of Civil Procedure provide:
>
> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Discovery rules are to be construed broadly and liberally. *Advanced Const. Serv., Inc., v. N.L.R.B.,* 247 F.3d 807, 812 (8th Cir. 2001). Under Rule 26(b)(1), the information and documents requested must be produced if they are relevant to the claims or defenses involved in the action. The initial standard, "relevant to the claim or defense of any party," remains a "very broad" criterion. *Id.*

Pursuant to 28 U.S.C. § 636(b)(1)(A) and NELR 72.3, the Court has reviewed the Magistrate's Order and the parties' briefs, and the Court finds that the Magistrate's Order is not clearly erroneous or contrary to law. West has requested the Court to declare the parties' rights and obligations under the terms of the Agreement. (Complaint ¶¶ 1-6).

AT&T filed a counterclaim, claiming that West is liable under the theory of breach of contract and seeking "[p]ayment of the outstanding AEF charges in an amount to be proven at trial." (Counterclaim ¶¶ 1-11).  Liberally construing the discovery rules and the parties' pleadings, the Court finds that the Magistrate's Order was not clearly erroneous or contrary to law, and that the information West seeks from AT&T is relevant to the parties' claims.  West has provided a reasonable basis to require AT&T to produce the requested information; therefore, AT&T's Statement of Appeal of Magistrate Judge's Order is denied.

### *Defendant AT&T's Summary Judgment Motion*

Defendant AT&T has moved for summary judgment on West's claims and on AT&T's counterclaim.  (Filing No. 34).  AT&T argues: 1) "AT&T has a legal right to collect an [AEF] from end users of its voice and data products;" 2) "the Master Agreement allows AT&T to collect an [AEF];" 3) "the Court should refer this litigation to the FCC under the Primary Jurisdiction Doctrine if there is any ambiguity in the FCC rulings regarding AT&T's right to charge an [AEF];" 4) "West's unjust enrichment claim fails as a matter of law because AT&T was entitled to receive the [AEF];" and 5) "AT&T is entitled to summary judgment on its breach of contract claim because West violated the terms of the Master Agreement by not paying the AEF."  (Filing No. 35 at 7, 8, 13, 15, and 17).

1. **West's Declaratory Judgment Claim**

In 1996, Congress passed the Telecommunications Act of 1996 (the "Act"), Pub. L. No. 104-104, 110 Stat. 56, codified throughout Title 47 of the United States Code.  Under the Act, telecommunications carriers are required to contribute to the advancement of universal service.  47 U.S.C. § 254(d).  "Universal service" is a concept that promotes

several principles, including quality service, reasonable rates, and widespread access to the Internet. 47 U.S.C. § 254(b). As a provider of telecommunication services, AT&T is required to contribute a portion of its revenues to the Universal Service Fund ("USF"), in order to ensure affordable telecommunication services to rural and low-income areas, schools, and hospitals. 47 U.S.C. § 254; 47 C.F.R. § 54.706. The FCC is responsible for establishing what percentage of its revenues AT&T must contribute to the USF. 47 C.F.R. § 54.709(a).

"The FCC permits telecommunications carriers . . . to recover the costs of their contributions to the USF from their customers, either through increased rates or through a separate line item on the customers' bills." *Bryan v. BellSouth Communications, Inc.* 377 F.3d 424, 425 (4th Cir. 2004) (citing FCC Order at ¶ 42). In the December 2002 FCC Order, the FCC acknowledged that telecommunication carriers may incur administrative costs associated with collecting the USF. (FCC Order at ¶ 54). The FCC determined that these administrative costs can still be recovered; however, they can only be "recovered through rates or other line item charges," rather than "a separate line item that includes a mark-up above the relevant contribution factor." (FCC Order ¶¶ 2,54). Therefore, assuming that the Master Agreement allows AT&T to recover administrative fees associated with collecting the USF contribution from West, AT&T is legally permitted to collect such fees.

AT&T argues the Master Agreement between AT&T and West permits AT&T to assess an AEF. Under New York law, "[t]he construction and interpretation of an unambiguous written contract is an issue of law." *Master-Built Const. Co., Inc. v. Thorne*, 802 N.Y.S.2d 714, 714 (N.Y. App. Div. 2005). "A contract does not become ambiguous

10

simply because the parties argue different interpretations." *See Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 460 (1957); *Moore v. Kopel*, 653 N.Y.S.2d 927 (N.Y. App. Div. 1997). Contracts are to be interpreted to give effect to the parties' intentions as expressed in the plain language of the contract. *Wallace v. 600 Partners Co.,* 658 N.E.2d 715, 717 (N.Y. 1995). "In construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless." *Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Associates*, 472 N.E.2d 315, 318 (N.Y. 1984).

     AT&T cites to the provision in the Master Agreement that states: "You shall pay AT&T for Your and Users' use of the Services at the rates and charges specified in the Attachments. . . ." (Master Agreement ¶ 2.1). The Master Agreement also states: "In the event of a conflict between the General Terms and Conditions and any Attachment, the Attachment shall take precedence." (Master Agreement at 1). AT&T points to the Attachment executed on March 5, 2002, wherein AT&T and West agreed that "AT&T reserves the right to increase charges as a result of expenses incurred by AT&T relating to regulatory assessments stemming from an order, rule or regulation of the [FCC] . . . (including but not limited to payphone, PICC and *USF related expenses*). (Filing No. 39, Ex. 4 §4) (emphasis added). This agreement was mentioned repeatedly in subsequent Attachments signed by West. (Filing No. 39, Ex. 3 §7.1, Filing No. 39, Ex. 6 §7, Filing No. 39, Ex. 8 at 2).

     AT&T argues that the language cited above allows AT&T to recover USF-related charges from West. AT&T further argues that the AEF AT&T is now assessing West is the exact same fee AT&T charged West prior to the December 2002 FCC Order, and the only

difference now is that the AEF and USF are separated into two line items. (Filing No. 35 at 12). AT&T claims that the FCC Order did not alter AT&T's right to collect the AEF from West and the Master Agreement allows AT&T to collect "both the directly attributable expense of making USF contribution . . . and the associated administrative expenses related to the same. . . ." (*Id.* at 13).

West, on the other hand, argues that the AEF is an entirely new charge and that the Master Agreement and Attachments do not allow AT&T unilaterally to impose new charges. (Filing No. 50 at 4-5). West claims that "[i]f AT&T has any right to recover an amount for administrative costs, it only has the right to do so by increasing existing administrative charges." (*Id.* at 5). According to West, no administrative charges exist in the Master Agreement or Attachments; therefore, the charge cannot be increased. (*Id.*).

The Court finds that the Master Agreement and Attachments contemplate a charge for USF related expenses. (Filing No. 39, Ex. 9; Filing No. 35 at 9 ¶9; Filing No. 42 at 6 ¶7). Furthermore, prior to the FCC Order, AT&T included a charge for USF related expenses in its Universal Connectivity Charge that West paid. (Filing No. 39, Ex. 9). As a result of the FCC Order, AT&T was no longer permitted to bill the USF contribution and the associated administrative expenses as a single item on AT&T's billing statements. AT&T responded by recharacterizing the fee as an AEF and charging it on a separate line item as required by the FCC Order. The Court finds that AT&T did not impose a new fee on West; instead, it separated the administrative fee it was already charging West from the USF contribution in response to a regulatory order, and gave the fee a name, AEF. Therefore, the Court finds the Master Agreement and Attachments permit AT&T to

12

continue to assess the same administrative expense fees that it included in the Universal Connectivity Charge prior to April 1, 2003.

In the alternative, AT&T requests that if the Court finds any ambiguity in the FCC rulings regarding AT&T's right to assess and AEF, the Court refer this litigation to the FCC under the Primary Jurisdiction Doctrine.

> Primary jurisdiction is a common-law doctrine that is utilized to coordinate judicial and administrative decision making. . . . The doctrine allows a district court to refer a matter to the appropriate administrative agency for a ruling in the first instance, even when the matter is initially cognizable by the district court. . . . One reason courts apply the doctrine of primary jurisdiction is to obtain the benefit of an agency's expertise and experience.

*Access Telecommunications v. Southwestern Bell Telephone Co.*, 137 F.3d 605, 608 (8th Cir. 1998). There is no formula for determining whether the doctrine should be applied; instead, courts must consider the facts of the individual cases. *Id.*

As West points out, the FCC has a longstanding policy of refusing to adjudicate private contract law questions. *See Listener's Guild, Inc. v. FCC*, 813 F.2d 465, 469 (D.C. Cir. 1987); *see also Verizon Communications, Inc. and MCI, Inc. Applications for Approval of Transfer of Control, Memorandum and Order,* FCC 05-185, WC Docket No. 05-75, 2005 WL 3099624 (F.C.C.) (rel. Nov. 17, 2005). The Court has determined above that under the Master Agreement, AT&T is permitted to charge West the same administrative expense fee that AT&T assessed prior to April 1, 2003, now on a separate line item. However, to the extent that West wishes to challenge the fairness and reasonableness of the AEF in light of the December 2002 FCC Order, the Court agrees with AT&T that this is a matter within the province of the FCC.  *See* 47 U.S.C. § 201(b); *see also Access Telecommunications,* 137 F.3d at 609 (stating "Congress granted to the FCC the authority

13

to determine whether '[a]ll charges, practices, classifications, and regulations' are reasonable").[5]  As West acknowledges, West has not yet made a Section 201 challenge. (Filing No. 50 at 6).

## 2.  West's Unjust Enrichment Claim

AT&T claims that West's unjust enrichment claim fails as a matter of law because there is a contract between AT&T and West.  In *Maryland Cas. Co. v. W.R. Grace and Co.*, 218 F.3d 204, 212 (2d Cir. 2000), the Second Circuit Court of Appeals, applying New York law, stated "[t]he notion of unjust enrichment applies where there is no contract between the parties."  *See also Fercus, S.R.L. v. Palazzo,* No. 98 Civ. 7728, 2000 WL 1118925, at *4 (S.D.N.Y. Aug.8, 2000).  "[A] claim for unjust enrichment may not be maintained where an express agreement exists defining the parties' rights and obligations."  *Theatre Row Phase II Associates v. National Recording Studios, Inc.,* 739 N.Y.S.2d 671, 673 (N.Y.A.D. 2002).  AT&T further claims that West's claim of unjust enrichment is barred by the

---

[5] 47 U.S.C. § 201(b) states:

All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful: Provided, That communications by wire or radio subject to this chapter may be classified into day, night, repeated, unrepeated, letter, commercial, press, Government, and such other classes as the Commission may decide to be just and reasonable, and different charges may be made for the different classes of communications: Provided further, That nothing in this chapter or in any other provision of law shall be construed to prevent a common carrier subject to this chapter from entering into or operating under any contract with any common carrier not subject to this chapter, for the exchange of their services, if the Commission is of the opinion that such contract is not contrary to the public interest: Provided further, That nothing in this chapter or in any other provision of law shall prevent a common carrier subject to this chapter from furnishing reports of positions of ships at sea to newspapers of general circulation, either at a nominal charge or without charge, provided the name of such common carrier is displayed along with such ship position reports. The Commission may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this chapter.

"voluntary payment doctrine." (Filing No. 35 at 16). Under the voluntary payment doctrine, "payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law" may not be recovered. *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E.2d 1155, 1156 (N.Y. 2003).

Prior to April 1, 2003, AT&T sent two letters to West regarding the changes in its billing practices that would occur beginning on April 1, 2003, pursuant to the FCC Order. (Filing No. 39, Exs. 9,10). These letters explained that as of April 1, 2003, AT&T would include a separate line item for the USF contribution and the AEF. (*Id.*). Thereafter, West paid AT&T's AEF charges in April 2003. (Filing No. 35 at 5 ¶15; Filing No. 42 at 6 ¶10). Although West claims it erroneously paid the April 2003 AEF charges (Complaint ¶7), West has failed to demonstrate that there was either fraud or a legitimate mistake in fact or law that caused West to make the April 2003 payment that would justify a finding of unjust enrichment. Additionally, the Court has determined that the Master Agreement and Attachments permit AT&T to assess an AEF. To the extent that West claims that the amount of AEF AT&T charged in April 2003 was unrelated to or in excess of "mark-up" that AT&T assessed prior to April 2003, West may maintain its action for unjust enrichment.

### 3.   **AT&T's Breach of Contract Counterclaim**

Finally, AT&T argues that it is entitled to summary judgment on its counterclaim for breach of contract. Under New York law, the elements of a breach of contract claim are: (1) the making of an agreement; (2) performance of the agreement by one party; (3) breach by the other party; and (4) damages. *Furia v. Furia,* 498 N.Y.S.2d 12 (N.Y.A.D. 1986). AT&T and West entered into a Master Agreement on October 6, 2000, and

subsequently executed Attachments to the Master Agreement, whereby AT&T would provide, and West would pay for, voice and data services. (Filing No. 39, Ex. 1). The Court has determined that the Master Agreement and Attachments permit AT&T to assess an AEF, and West acknowledges that it has withheld payment of the AEF since May 2003. The Court finds West has breached its contract with AT&T; however, the Court finds that there are material issues of fact remaining regarding the issue of damages.

### *Plaintiff West's Summary Judgment Motion*

Plaintiff West has also moved for summary judgment on its claims against AT&T. (Filing No. 36 ). West argues that the AEF charge AT&T is assessing is a new surcharge that was not authorized by the Master Agreement. (Filing No. 42 at 7). West further asserts that because AT&T had the discretion to pass through the USF to West, "any expenses related thereto are not 'the result of' an order, rule or regulation of the [FCC]." (*Id.*). In the alternative, West moves for partial summary judgment in the form of an order declaring that AT&T is only entitled to fair and reasonable fees directly related to the actual costs AT&T incurs in collecting USF charges from West. (Filing No. 36 at 2). West contends that AT&T cannot recover costs related to general overhead or operating expenses. (Filing No. 42 at 7).

The arguments made by the parties on this issue have been summarized in the discussion above. The Court determined that AT&T is permitted to assess an AEF under the Master Agreement and Attachments. For the reasons stated above, West's motion for summary judgment is denied. Material issues of fact remain regarding the amount of damages AT&T is entitled to receive, and this issue will be addressed in the damages portion of AT&T's breach of contract claim.

For the reasons stated in this memorandum,

IT IS ORDERED:

1) Defendant AT&T Corp.'s Statement of Appeal of Magistrate's Order (Filing No. 48) is denied;

2) Defendant AT&T Corp.'s Motion for Summary Judgment (Filing No. 34) is granted in part and denied in part as follows:

   a) AT&T Corp.'s Motion for Summary Judgment on Plaintiff West Corporation's Declaratory Judgment claim is granted;

   b) AT&T Corp.'s Motion for Summary Judgment on West Corporation's Unjust Enrichment claim is denied;

   c) AT&T Corp.'s Motion for Summary Judgment on AT&T's Counterclaim for Breach of Contract is granted; however, issues of fact remain regarding the question of damages; and

3) Plaintiff West Corporation's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment (Filing No. 36) is denied.

DATED this 10th day of March, 2006.

                                                  BY THE COURT:

                                                  s/Laurie Smith Camp
                                                  United States District Judge